108

## Membership of Credit Unions

SIDNEY MARGULIES, Deputy Attorney General, and THOMAS D. McBRIDE, Attorney General, April 22, 1958.—You have asked to be advised whether credit unions incorporated under the Credit Union Act of Pennsylvania [1] may include within their field of membership the following groups:

1. Individuals who were formerly eligible for membership by reason of employment and who are members of the credit union as of the date of the termination of that employment, but who are now retired.

2. Individuals who are employes of the credit union itself and are not otherwise presently eligible for membership.

---

[1] Act of May 26, 1933, P. L. 1076, as amended by the Act of May 18, 1937, P. L. 713, 14 PS §201 et seq.

3. Individuals who are within the families of persons who, in their own right, are eligible for membership.

You have also asked to be advised whether in the event that any or all of the groups enumerated in the preceding paragraphs may be included in the field of membership of a credit union, the Secretary of Banking has the administrative authority to designate such persons as associate members only and to require the articles of incorporation to restrict the activities of such associate members.

Specifically, you have asked whether the activities of such associate members may be limited to the purchase and withdrawal of shares and to the borrowing from the credit union on the security of such shares or the shares of other members who may become co-makers, endorsers, guarantors or sureties on such loans.

Lastly you have inquired as to whether your department may require that the articles of incorporation of a credit union prohibit an associate member from serving as an officer, director or member of any committee in the credit union.

In section 1 of the Credit Union Act of Pennsylvania [2] the legislature has indicated that the purposes of a credit union are "twofold": (1) To promote thrift among its members; and (2) to provide a source of credit to them at legitimate rates of interest. In order to accomplish these purposes, members of the credit union, who invest their savings in the organization, must have confidence in the ability of the credit union to pay an adequate return on their investments while maintaining a high degree of safety. Members must also be assured of a ready source of credit available to them in case of personal need.

---

[2] Act of May 26, 1933, P. L. 1076, sec. 1, 14 PS §201.

The legislature has seen fit to promote these objectives by specifically limiting the scope of eligibility for membership in the credit union to those individuals and organizations that have a "common bond of association by reason of occupation within a well defined neighborhood, community or rural district".[3]

These limitations on membership in credit unions have never been interpreted by the courts of this Commonwealth or any other State. We are compelled, therefore, to turn to the statute itself and, bearing in mind the purposes of the act as previously set forth, to determine whether each of the groups enumerated by you in your request meets the requirements of section 4 of the act.

Individuals, both employers and employes, associated in a single enterprise located in one plant or personnel of one branch of the enterprise, would obviously meet the limitations of a "bond of association by reason of occupation" and geographical area. Organizations, such as union locals composed of employes of single plants, would also come within the statutory limits. Individuals, both employers and employes, who are associated in different enterprises but employed in the same industry or type of endeavor located in one geographical area would, of course, be eligible for membership as would organizations composed of such in-

---

[3] "Credit union membership shall consist of the incorporators and such other persons as may be elected from time to time to membership and who subscribe to at least one share of the capital stock and pay the initial installment thereon, together with the entrance fee. Organizations incorporated or otherwise composed principally of the same general group as the credit union membership may be members. Credit union organizations shall be limited to groups of both large and small membership having a common bond of association by reason of occupation within a well defined neighborhood, community, or rural district": Act of May 26, 1933, P. L. 1076, sec. 4, as amended by the Act of May 18, 1937, P. L. 713, sec. 1, 14 PS §204.

dividuals. These individuals and groups not only are located in the same geographical area, but the "bond of association" is also present. Each potential member knows that all of the other participants are regularly employed under the same conditions as he. He then has the sense of security necessary to encourage him to buy shares in the organization.

Do retired personnel have that "bond of association"? A retired person has been defined as "one who has ended his regular activity because of age or health by arrangement with his employer." [4] The retired individual may have worked many years in the industry. With the expansion of pension plans, he might still be receiving income from his former employer. Generally he would tend to think of himself still as associated with the working force or the management of the firm. His sympathies and loyalties after years of service would enable him to have a bond of association by reason of occupation that would make him eligible to retain his membership. It is a simple question of fact as to whether he is still within the geographical area.

The extension of membership to employes of the credit union itself presents a somewhat different problem. Essentially, the question is whether by reason of their intimate knowledge of the credit union association, and their consequent knowledge of the problems, attitudes and loyalties of members, individuals employed by the credit union itself possess "the bond of association by reason of occupation." Such individuals may have obtained their credit union employment in either of two ways. Some will have been hired directly by the credit union and never held membership in the credit union while previously employed. Others will have previously been members of the credit union, or

---

[4] Watson v. Brower, 24 N. J. 210; 131 A. 2d 512, 515 (1957).

would have been eligible by reason of employment had the credit union been in existence, who were asked to relinquish their regular employment so that they could work full time for the credit union association. While individuals in the former group could not be held to have ever achieved the common bond of association by reason of occupation, those individuals in the latter group could not be said to have lost the common bond of association merely by transferring to the association itself. It is these individuals who do possess a real knowledge of the problems, attitudes and loyalties of members. They have retained their bond of association by reason of occupation which would make them eligible to retain their membership.

Individuals who are within the immediate families (mother, father, brother, sister, spouse or child) of persons who, in their own right, are eligible for membership and who share the same domicile are within one economic unit. Their economic status is also controlled, at least in part, by the fact that one of the household either presently or formerly gained his livelihood from the enterprise involved. The bond of association by reason of occupation is sufficiently elastic to encompass members of the immediate families of persons who, in their own right, are eligible for membership. The problem of geographical location does not arise since membership is to be limited to those of the immediate family who share the same domicile.

While it is our opinion that retired personnel and employes of the credit union association may retain their membership and that the immediate family may become members in credit unions, we are not unmindful of the risks and dangers of our holding. We are aware of the fact that elements of uncertainty in credit investigations and collections are introduced. Working members will no longer have a definite knowledge of

the financial position of every other member. The retired personnel and the family members may more readily move out of the geographical area. Collections may be more hazardous. Credit union employes have an opportunity to work with the books and records of the association. Thus, the risks of fraud and defalcation become much greater.

But the inclusion of these groups within the field of membership will enable the association to grow into maturity serving all persons who come within its legitimate sphere of interest. Individuals who gain a technical knowledge of the workings of the credit union will be eligible to hold full time supervisory positions. Working members need not be subject to these risks without limit or restriction. The Department of Banking has administrative authority to promulgate regulations in this area.

The power of the Department of Banking to supervise and regulate every aspect of credit union activity is explicit in the act. Section 2 provides that the department must approve the articles of incorporation before they may be sent to the Department of State, not only as to form but as to whether the purposes of the act are being met. The proposed bylaws of the association must also be scrutinized by the department. The same section gives the department the same power over any amendments to the articles of incorporation or to the bylaws. "Bylaws so made, amended or altered shall not become operative, however, until approved by the Department of Banking" is the language of section 3X of the act. Section 5 of the act provides that the credit unions shall be under the supervision of the Department of Banking. Indeed, an examination of the act reveals that almost every section dealing with the activities, rights and duties of the credit unions stipulates that the department shall supervise and regulate.

Therefore, we point out to you that while your department must consider retired personnel, employes of the credit union formerly eligible by reason of occupation, and the immediate families of members, within "the bond of association" and therefore eligible for membership, your department may issue regulations which restrict the rights and privileges of these individuals so that the intent and purpose of credit unions as stated in the act will not be thwarted.

The particular restrictions which you have suggested to us are reasonably related to the maintenance of the intent and purposes of the credit union act. They may be applied to retired personnel, employes of the credit union formerly eligible by reason of occupation, or the immediate families of members, as the Secretary of Banking, in his discretion, deems proper.

The designation of the individuals in the three groups as "associate members", if the designation enables the Secretary to better administer the act, is legally unobjectionable. However, the classification of all three groups within a single category may reduce the flexibility that the department needs to deal with problems not common to all.

Therefore, it is our opinion, and you are accordingly advised that credit unions incorporated under the Credit Union Act of Pennsylvania may include within their field of membership the following groups:

1. Individuals, who were formerly eligible for membership by reason of occupation and who were members of the credit union as of the date of the termination of that employment, but who are now retired.

2. Individuals who are presently employes of the credit union association, but who were formerly eligible for membership by reason of occupation and who were members of the credit union as of the date of their employment by the credit union association.

3. Individuals in the immediate families of persons who, in their own right, are eligible for membership, and who share the same domicile.

You are further advised that the Department of Banking has the administrative authority over credit union associations whereby the department may promulgate regulations defining the rights of members in credit union associations in order to further the purposes and intent of credit union associations as set forth in section 1 of the Credit Union Act of Pennsylvania.